## BLANCHARD T. PETTINGILL ET AL.

### v.

## LUCY DRAKE.

1. EVIDENCE—FRAUDULENT INTENT.—To render a sale fraudulent un-
der Sec. 1, Chap. 11, R. S. 1874, it is not necessary to show that the pur-
chaser participated in the fraudulent intent as his title to the property
is not in issue. Where the question at issue was whether a husband acting
as the general agent of his wife, had within two years next preceding the
commencement of this suit fraudulently conveyed or assigned the effects of
appellee, his wife, or a part thereof, so as to hinder or delay her creditors.
*Held,* that the evidence as to the transaction in this case was sufficient to
have fairly raised upon the trial the question of fraudulent intent and it
should have been submitted to the jury.

2. HUSBAND AND WIFE—EVIDENCE.—Where appellee was put upon
the stand as a witness for appellants, and in order to charge her with a
knowledge of the sale by her husband of her effects to one W., she was
asked certain questions inter ded to draw out the facts that she had derived
certain information concerning the sale from her husband and that she had
given him certain directions in regard to it. *Held,* that this class of evi-
dence does not come within section 5, chapter 51 of the statute. The wife
was being examined with reference to her own business transactions in
which it was alleged her husband had acted as her agent. She was not tes-
tifying against her husband and therefore he could not be prejudiced by
anything she might say.

APPEAL from Circuit Court of Macon county; the Hon. C. B.
SMITH, Judge, presiding. Opinion filed February 5, 1884.

Messrs. BUNN & PARK and Messrs. COOPER & TENNERY, for
appellants; that where a plaintiff has evidence tending to
prove his case it is error to exclude it from the jury, cited
Holliday v. Burgess, 34 Ill. 193; Merricks v. Davis, 65 Ill.
319; Craig v. Peake, 22 Ill. 185; Kohl v. Lindley, 39 Ill. 195;
Crowley v. Crowley, 80 Ill. 469.

Mr. W. C. JOHNS, for appellee; that the statements of an
agent, when not part of the *res gestæ,* are not evidence, cited
1 Greenleaf on Ev., § 113, Vol. 2, § 63, note 5; Waterman v.
Peet, 11 Ill. 648; Whiteside v. Margarel, 51 Ill. 507.

As to estoppel: Hunley v. Hunley, 15 Ala. 91; Reeves v.

Pettingill et al. v. Drake.

Matthews, 17 Ga. 449; Young v. Foute, 43 Ill. 33; Ray v. Bell, 24 Ill. 444; Baker v. Pratt, 15 Ill. 568; Smith v. Newton, 38 Ill. 230; Winchell v. Edwards, 57 Ill. 41; Tucker v. Conwell, 67 Ill. 552; Knoebel v. Kircher, 33 Ill. 308; Winslow v. Cooper, 104 Ill. 235.

An insolvent debtor may sell his property, and if the transaction be an honest one, in good faith, and for an adequate consideration, it matters not how many creditors may thereby be prevented from reaching the property: Erb. v. Cole, 31 Ark. 554; Wood v. Shaw, 29 Ill. 444; Miller v. Kirby, 74 Ill. 242; Bowden v. Bowden, 75 Ill. 143; Waddams v. Humphrey, 22 Ill. 661.

To impeach a sale of property as fraudulent as to creditors, it is necessary to show that both the vendor and purchaser fraudulently intended to hinder and delay creditors: Ewing v. Runkle, 20 Ill. 449; Brown v. Riley, 22 Ill. 46; Myers v. Kinzie, 26 Ill. 36; Gridley v. Bingham, 51 Ill. 153; Hatch v. Jordan, 74 Ill. 414; Bowden v. Bowden, 75 Ill. 143; Meixsell v. Williamson, 35 Ill. 529; Hessing v. McCloskey, 37 Ill. 532; Herkelrath v. Stookey, 63 Ill. 487.

Even if the evidence was improperly excluded, if the verdict could not have been otherwise, a reversal will not follow: Stobie v. Dills, 62 Ill. 433; Crowley v. Crowley, 80 Ill. 469; Hazen v. Pierson, 83 Ill. 241; Caveny v. Weiller, 90 Ill. 159; Hubner v. Feige, 90 Ill. 208.

McCulloch, P. J. This was a suit in attachment, brought by the firm of Moses Pettingill & Co. against appellee, upon the ground that within two years preceding the filing of the affidavit she had fraudulently conveyed and assigned her effects or part thereof so as to hinder and delay her creditors. Appellee filed a plea in abatement to the writ denying the fraudulent conveyance, but suffered a default for want of a plea to the declaration. The jury assessed the damages against her at the sum of $566.30 but found in her favor upon the issue joined upon the plea in abatement, and the court rendered judgment accordingly. From this judgment the plaintiffs in the court below prayed an appeal to this court.

On the trial of the case before the jury, several witnesses were examined on the part of appellants to prove the fraudulent character of the disposition of her stock in trade by appellee, at the close of which her counsel moved to exclude all the evidence upon that issue from the jury, which motion the court sustained and directed them to find for appellee; to which ruling appellants excepted, and assigned the same for error in this court.

It is contended on the part of appellee, that as she owned no property she could not be guilty of a fraudulent disposition of any. The evidence tends very strongly to show that her husband, Peter J. Drake, was doing business in her name with her consent; that he was acting as her general agent in carrying on the store; that he contracted debts in her name for goods purchased for the store; that when sued for these debts, judgments were rendered against her, and that the bill of goods for which this suit was brought was purchased in her name. Upon that question the evidence was of such a character that a jury might properly have found her to be the owner of the goods.

It is not denied that the goods were sold to one Wait. The evidence shows that Wait was doing business in Decatur, while appellee and her husband were carrying on the business at Warrensburg; that when creditors began to press them for payment, the husband went to Decatur and endeavored to borrow money from Wait, who was already a creditor of the house in the sum of $172.07, but that he failed in obtaining the money; that thereupon Wait went to Warrensburg, and late on Saturday night, without taking any invoice of the stock, made a purchase of the entire contents of the store for the sum of $1,500, when the evidence tends strongly to show that they were worth from $2,000 to $2,500; that the $172.07 which appellee was then owing Wait was deducted from the purchase money, and Wait gave his check for $127.93, and for the balance, $1,200, he gave his note payable in nine months; that of the money so received, appellee's husband sent $100 to his mother, and that an agreement was entered into with Wait, that if any of the creditors who wanted to

settle would take Wait's note at nine months, he was to give them his notes, and indorse the amount of such notes on that for $1,200, but if any refused to do so he was to pay them the cash upon appellee's request, but only such creditors as Drake directed were to be thus preferred by note or cash. In a very few days after the sale Wait had settled with preferred creditors to the amount of $823.53, leaving a balance unpaid on the $1,200 note of $366.47, whereupon the said note was surrendered and a new one given for the last named sum. This last mentioned note Drake turned over to his attorneys, to pay them for defending himself and his wife from threatened litigation.

At the same time there was owing to appellee, on notes and book accounts, about the sum of $1,500, which it seems were sold to the firm of Race & Co., in payment of an indebtedness to them of $594.64. It therefore appears that out of the assets of the concern Drake effected a payment of preferred creditors to the amount of about $1,600, leaving nearly that amount of debts unpaid.

The question to be decided by the jury was whether this transaction on the part of Drake, acting as general agent of his wife, manifested an honest intent and effort to realize the full value of the assets of the concern for the benefit of appellee's creditors, or did it manifest an intent upon his part to hinder and delay them by putting the assets beyond their reach. We are not bound to inquire whether or not Wait was an innocent purchaser, as his title to the goods is not in issue in this suit, but simply to inquire if Drake, the husband of appellee, had within two years next preceding the commencement of this suit, fraudulently conveyed or assigned the effects of appellee, or a part thereof, so as to hinder or delay her creditors, as provided in the sixth clause of section 1, chap. 11, R. S. 1874.

Without entering upon a minute discussion of the points in the testimony which might be regarded by the jury as badges of such fraudulent intent, we will simply say that, in our opinion, there was enough of it to at least have fairly raised the question upon the trial, and this being so, it is con-

ceded by counsel for appellee that it ought to have gone to the jury. The point of his argument is, that there was no evidence in the case from which the jury could fairly deduce the inference of a fraudulent intent.

On the trial of the case, appellee was put upon the stand as a witness for appellants. In order to charge her with a knowledge of the sale to Wait, she was asked certain questions intended to draw out the facts that she had derived certain information concerning the sale from her husband, and that she had given him certain directions in regard to it. All this evidence was excluded by the court, upon objections being made by her counsel. As at present advised, we can see no objection to this line of inquiry. She was being examined with reference to her own business transactions, in which it was alleged her husband had acted as her agent. She was not testifying against her husband, and therefore he could not be prejudiced by anything she might say. We do not regard this class of evidence as coming within the exceptions contained in the fifth section, chap. 51, R. S. 1874. But since counsel for appellants failed to follow up their questions with an offer as to what they expected to prove by such questions, we are unable, except in one instance, to see their materiality. We would not, therefore, be inclined to reverse the judgment for that cause. But for the error in withdrawing the evidence from the jury, the judgment will be reversed and the cause remanded.